IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| C. ALEXANDRA TELLUSELLE, | ) | Civ. No. 11-00343 BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT |
| | ) | |
| HAWAII PACIFIC UNIVERSITY., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants Hawaii Pacific University ("HPU") and Erleina Danao's Motion For Summary Judgment (Doc. 44). The Court heard this Motion on July 20, 2012. After careful consideration of the Motion, the supporting and opposing memoranda, and the arguments presented at the hearing, the Court GRANTS Defendants' Motion.

FACTUAL BACKGROUND

Plaintiff C. Alexandra Telluselle attended HPU in Fall 2005 to pursue a Certificate in Organizational Change and Development. Although she was only one course shy of receiving the Certificate, she returned to Sweden and did not receive the Certificate. (Defendants' Exs. 1, 2.)

In December 2009, Plaintiff applied to HPU's Master of Arts in Organizational Change ("MAOC"). (Defendants' Ex. 3.) She was accepted into the MAOC Program and, as an international student, she was required to take the Management 6100 course. (Danao Decl'n ¶ 9, Richard Ward Decl'n ¶ 4; Defendants' Ex. 5.)

Plaintiff began attending classes at HPU in February 2010. (Danao Decl'n ¶ 11, Defendants' Ex. 7.) On March 10, 2010, Plaintiff asked Danao, who is the Director of the Center for Graduate and Adult Services for Graduate Advising Services, about whether she could transfer credits from Malmo University in Sweden, where she had taken graduate level courses. (Danao Decl'n ¶ 16.) Danao notified Plaintiff that HPU must receive the official course descriptions and Plaintiff's official transcript from Malmo University before evaluating her request. (Id.) HPU received the course descriptions on March 15, 2010 but did not receive the official transcript until October 19, 2010. (Id. ¶¶ 20, 22.) A week later, Plaintiff was notified that the credits would not be transferred to HPU, but that decision was later reversed and HPU applied nine credits to her MAOC Program. (Id. ¶ 23; Defendants' Ex. 24.) At the same time, Plaintiff stopped attending classes and received "F" grades for all of her Fall 2010 classes. (Danao Decl'n ¶ 28.)

In February 2011, Plaintiff met with Danao to register for Spring 2011 courses. (Id. ¶ 30.) Danao informed Plaintiff that she still owed HPU a balance of $5,680 for her Fall 2010 tuition and that HPU policy prohibited her from registering for Spring 2011 courses until the balance was paid off. (Id.) Plaintiff did not pay the balance of her tuition or her deposit for the Spring 2011 semester by the registration deadline. (Id. ¶ 31.) Because she did not complete the necessary courses for the MAOC Program, she did not receive her degree. (Id. ¶ 33.) Plaintiff has not been a registered student at HPU since January 2011, and she currently has an outstanding balance of $5,680 owed to HPU. (Id. ¶ 32; Deborah Nakashima Decl'n ¶ 5; Defendants' Ex. 27.)

On May 16, 2011, Plaintiff filed the instant lawsuit against Defendants in state court for negligence, breach of contract, and race or national origin discrimination. On May 26, 2011, Defendants removed the case to federal court. After several attempts by the parties at settling this case, Defendants filed the present Motion for Summary judgment on May 31, 2012.

## STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law. See Fed. R. Civ. P.

56(c). In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 2000).

In deciding a motion for summary judgment, the court's function is not to try issues of fact, but rather, it is only to determine whether there are issues to be tried. Anderson, 477 U.S. at 249. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

DISCUSSION

I.  Plaintiff's Negligence Claim

Plaintiff argues that Defendants acted negligently in providing her academic advice and when they failed to grant her request to transfer credits from Malmo University to HPU.

"To prevail on a negligence claim, a plaintiff must prove: (1) a duty, or obligation, recognized by the law, requiring a defendant to conform to a certain standard of conduct; (2) a failure on a defendant's part to conform to the standard

required (a breach of the duty); (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage." Rodriguez v. Gen. Dynamics Armament & Tech. Prods., Inc., 696 F. Supp. 2d 1163, 1177 (D. Haw. 2010). "It is fundamental that a negligence action lies only where there is a duty owed by the defendant to the plaintiff." Bidar v. Amfac, Inc., 669 P.2d 154, 159 (Haw. 1983). "The existence of a duty . . . is entirely a question of law." Knodle v. Waikiki Gateway Hotel, Inc., 742 P.2d 377, 383 (Haw. 1987).

Plaintiff asserts that academic advisors and educational institutions owe students a duty to provide effective academic advice, including immigration advice, and to accept credits from other academic institutions. (Motion at 13.) However, a negligence claim requires that the duty be "recognized by the law." Rodriguez, 696 F. Supp. 2d at 1177. Plaintiff cites to no law supporting her argument that such duties exist. This Court applies Hawaii negligence law, which has not decided whether to impose such duties on academic advisors and institutions. This Court therefore turns to guidance from other jurisdictions that have addressed this issue.

The majority of other jurisdictions do not recognize the tort of educational negligence or malpractice brought by students against their educational advisors and institutions because policy considerations dictate that no duty is owed

5

by academic advisors and institutions to students. Ross v. Creighton Univ., 957 F.2d 410, 414 (7th Cir. 1992) ("the overwhelming majority of states that have considered [whether a cause of action exists against an institution for educational negligence and malpractice] have rejected it"); Hendricks v. Clemson Univ., 578 S.E.2d 711, 715 (S.C. 2003) (agreeing with California law, which "represents the position of the majority of states in refusing to recognize the tort of 'educational malpractice' in claims brought by students"); Brown v. Compton Unified Sch. Dist., 80 Cal. Rptr. 2d 171, 172 (Cal. App. 1998) ("Policy considerations preclude an actionable 'duty of care' in persons and agencies who administer the academic phases of the . . . educational process."). These courts identify several policy concerns with recognizing an actionable duty of care owed by educators to students: "(1) the lack of a satisfactory standard of care by which to evaluate educators, (2) the inherent uncertainties of the cause and nature of damages, and (3) the potential for a flood of litigation against already beleaguered schools." Hendricks, 578 S.E.2d at 715 (citing Ross, 957 F.2d at 414-15; Peter W. v. San Francisco Unified Sch. Dist., 60 Cal. App. 3d 814, 825 (Cal. App. 1976)).

In Hendricks, 578 S.E.2d at 712, the plaintiff transferred as a student from one college to Clemson University, where he was to play on the baseball team. Prior to registration, the plaintiff met with his Clemson academic advisor,

who advised him to take certain classes. Id. at 713. The advisor realized that she made a mistake in advising the plaintiff to take those classes, which resulted in him being ineligible under NCAA rules to play baseball at Clemson. Id. The advisor acknowledged her mistake, claimed responsibility for it, and petitioned the NCAA to allow Plaintiff to play baseball. Id. That request was denied. Id.

The plaintiff thereafter sued Clemson for negligence and breach of contract for the advisor's mistakes. Id. With respect to the negligence claim, the South Carolina Supreme Court noted that the state did not previously recognize a negligence cause of action based on educational advisement. Id. at 714. After noting that the majority of states refuse to recognize educational negligence or malpractice and considering the policy concerns with recognizing such a tort, the court concluded: "We believe recognizing a duty flowing from advisors to students is not required by any precedent and would be unwise, considering the great potential for embroiling schools in litigation that such recognition would create." Id. at 715.

As in Hendricks and the other cases above, this Court similarly concludes that Defendants owed no duty to Plaintiff that supports her negligence claim. Hawaii courts have not acknowledged such a duty, and the courts from other jurisdictions that have addressed the issue refuse to find such a duty.

Additionally, the policy considerations stated above weigh in favor of finding no duty flowing from Defendants to Plaintiff.  See Hendricks, 578 S.E.2d at 715.  The Court therefore concludes that Plaintiff has not established "a duty, or obligation, recognized by the law, requiring [Defendants] to conform to a certain standard of conduct."  Rodriguez, 696 F. Supp. 2d at 1177.  Because "[i]t is fundamental that a negligence action lies only where there is a duty owed by the defendant to the plaintiff," summary judgment in favor of Defendants on this claim is proper.  See Bidar, 669 P.2d at 159.

II.        Plaintiff's Breach of Contract Claim

Plaintiff's breach of contract claim is intertwined with her negligence claim, as both claims are based on Defendants' academic advice and failure to transfer Malmo University credits.  However, the majority of courts have barred any attempt to repackage an educational negligence or malpractice claim as a contract claim.  In Hendricks, 578 S.E.2d at 716, discussed above, the court succinctly stated:  "In barring contract actions for educational malpractice claims, courts have noted that the policy concerns that preclude those claims in tort apply with equal force when the claim is brought in contract."  See also Ross, 957 F.2d at 416 ("As several courts have noted, the policy concerns that preclude a cause of action for educational malpractice apply with equal force to bar a breach of

contract claim."). Consequently, to the extent Plaintiff is repackaging her negligence claim as one sounding in contract, summary judgment on the contract claim is appropriate.

Some courts do recognize that the "relationship between a student and an educational institution is, in some of its aspects, contractual." Ross, 957 F.2d at 416. "To state a claim for breach of contract, the plaintiff must . . . point to an identifiable contractual promise that the defendant failed to honor." Id. at 416-17.

In this case, Plaintiff points to several alleged contracts and promises that she says Defendants breached. Plaintiff argues that the Intent To Enroll and the Registration Form are such contracts. (Plaintiff's Ex. 25.) In the Intent to Enroll, Plaintiff accepted HPU's offer of admission and stated her intent to enroll at HPU. (Id.) In the Registration Form, Plaintiff agreed to "pay for the course(s) and all of the charges related to this registration" and to be "responsible for all charges incurred, should I fail to complete my financial aid processing, or obtain other financial sponsorship, by the payment deadline." (Id.) In the Registration Form, Plaintiff further agreed that: "If my tuition payment is not received by the second day of the term, I may be disenrolled for the academic term . . . [and HPU] will be entitled to withhold any of the services from me and take other legal remedies available . . . ." (Id.) In neither document do Defendants make any

9

promises to Plaintiff.  Therefore, Defendants could not have breached any alleged promise made in the Intent to Enroll or the Registration Form.

Plaintiff also asserts that Defendants breached their "promise that if the student pays and passes required courses as established by the course curriculum and accreditation of the school, she or he will receive a degree." (Opp. at 2, 7.)  However, Plaintiff did not fully pay for her tuition, and she currently has an outstanding balance of $5,680 owed to HPU.  (Nakashima Decl'n ¶ 5; Defendants' Ex. 27.)  Further, she did not pass all of her classes, nor did she take all of the required courses in her MAOC Program.  (Danao Decl'n ¶ 28.) Therefore, even if such a promise or contract existed, Plaintiff has not met her obligation to pay for a degree from HPU or pass the required classes and therefore, under this alleged promise, Defendants were not obligated to give her a degree.

Plaintiff also alleges that Danao promised to give her a decision on whether HPU would transfer credits from Malmo University by December 19, 2010, but breached that promise when HPU did not make a decision by that date. (Opp. at 6, 8.)  Plaintiff states that Danao sent her an email stating that promise, and she points to her Exhibit 19 as evidentiary support.  However, no email is contained in Exhibit 19.  (Plaintiff's Ex. 19.)  Rather, Exhibit 19 is a blank page with a handwritten note by Plaintiff, which states:  "Exhibit 19 (E-mail Erleina

10

Danao's Promise Before Dec 19th")." (Id.)  Plaintiff therefore provides no evidence of this alleged promise.  Defendants, however, include a declaration by Danao, in which she states:  "I have never made promises to [Plaintiff] in connection with academic advice or her request to transfer credits from Malmo University."  (Danao Decl'n ¶ 19.)  Accordingly, the only evidence before this Court establishes that Danao did not make promises to Plaintiff regarding credits from Malmo University.

Accordingly, because (1) Plaintiff may not repackage her negligence claim as one sounding in contract, (2) Defendants made no promises in the Intent to Enroll and Registration Form, (3) Plaintiff did meet the requirements for an MAOC degree, and (4) the only evidence before the Court establishes that Danao did not make promises regarding Malmo University credits, the Court grants summary judgment in Defendants' favor on Plaintiff's contract claim.

III.    Plaintiff's Discrimination Claim

Plaintiff asserts that Defendants discriminated against her on the basis of race or national origin, in violation of Title VI of the Civil Rights Act of 1964.  In her Opposition, Plaintiff argues that Defendants discriminated against her "by not offering all Swedish students the same opportunities."  (Opp. at 3.)  She alleges that two other Swedish students were treated better than her:  (1) Andreas

Blomquist, who "was allowed a yearly 20% tuition waiver and 50% on-campus job" and (2) Kristin Axelsson, who "got a 100% tuition waiver." (Opp. at 12.) She also states that other Swedish students did not have to take the Management 6100 course, which she was required to take. (Opp. at 15.)

In order to establish a prima facie case of race or national origin discrimination, Plaintiff must show that: (1) she was a member of a protected class, (2) she was performing her educational expectations satisfactorily, (3) she experienced an adverse action, and (4) she was treated differently than similarly situated students not in her protected class. EEOC v. NCL America, 535 F. Supp. 2d 1149, 1162 (D. Haw. 2008); see also Brewer v. Bd. of Trs. of Univ. of Illinois, 479 F.3d 908, 921 (7th Cir. 2007) ("Adjusting terms for the educational context, [a discrimination claim requires] membership in a protected class, meeting the school's legitimate educational expectations, an adverse educational action and worse treatment than that of similarly situated students not in the protected class.").

If Plaintiff establishes the prima facie case, the "burden then shifts to [Defendants] to articulate a legitimate, nondiscriminatory reason for the action." NCL America, 535 F. Supp. 2d at 1162. If Defendants carry this burden, Plaintiff must show that their reason was a pretext for discrimination. Id. Plaintiff may do

so "either directly by persuading the court that a discriminatory reason more likely motivated [Defendants] or indirectly by showing that [their] proffered explanation is unworthy of credence." Id.

Plaintiff argues that she was discriminated based on her Swedish race and national origin because other Swedish students were treated more favorably than she was. (Opp. at 12, 15.) Plaintiff meets the first requirement for a prima facie case of discrimination, as she is of Swedish descent and is from Sweden. See Gathenji v. Autozoners, LLC, 703 F. Supp. 2d 1017, 1029 (E.D. Cal. 2010). Even assuming that Plaintiff was performing her educational expectations satisfactorily and that she experienced an adverse action, Plaintiff provides no evidence that she was treated differently than similarly situated students outside of her protected class. NCL America, 535 F. Supp. 2d at 1162; see also Brewer, 479 F.3d at 921. Plaintiff's sole argument is that other Swedish students received tuition waivers while she did not, and that other Swedish students did not have to take the Management 6100 course while she was required to take it. However, Plaintiff's burden is to establish that she was treated differently than *non-Swedish* students. Plaintiff provides no evidence that students outside of her protected class were treated differently than her, and she therefore fails to prove a prima facie case of

race or national origin discrimination.  Accordingly, summary judgment in Defendants' favor on this claim is appropriate.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment.  The Clerk of Court is DIRECTED to enter Judgment in favor of Defendants and against Plaintiff, and to close this case.

DATED:  Honolulu, Hawaii, August 31, 2012.

IT IS SO ORDERED.



   /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Telluselle v. Hawaii Pacific University, et al., Civ. No. 11-00343 BMK; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.